I would the lawyers who are going to argue this case please stand and give us their names. You each have 20 minutes. You do not need to use it. Mr. Schwartz, would you like to We have four arguments, Your Honors. May it please the Court. The first one is a speedy trial argument. Mr. Williams exceeded, through no fault of his own, his 120-day speedy trial limit by 20 days. Of these days, we have not had a speedy trial. That is the first period from his arrest to the first court of 22 days and the last period of 48 days between April 19th and June 5th are undisputed. So what's at issue are three periods in between. These involve, first of all, the period from October 1st to December 2nd, 2015. And at this conference, the court scheduled and the defense scheduled an initial trial date. The state proposes as a clear argument that scheduling an initial trial date, if not that day, elipses a factor of delay. But in fact, logically speaking, there is nothing to delay when you schedule an initial trial date. When you come and say, I'm ready for trial, the court says, apparently they determined this before. The first available date is, in this case, December 2nd. There's nothing in the record that says he's walked in on October 1st and said, I'm ready for trial. No, but he came in and said, I'd like to schedule an initial trial date. Yeah, let's schedule a trial date. But that's not a continuance, and there's nothing at that point that he's delaying. He's saying, schedule a trial date. And if the court says, well, let's start tomorrow, if at that point he said, I'll need a continuance, then you have an issue. But that's not what happened here. So there's not a delay in the Cordell sense that's attributable to the defendant or even anyone else at this point. It's not a delay. It's a technical term in the law. Well, but it depends how you read delay. If you read delay as passage of time, there's a passage of time from October 1st to December 2nd, 2015, that is agreed to by the defendant. Well, at this point, that's agreed to, actually, and that's not the way Cordell, the Supreme Court, describes what a delay is. A delay is a period, an agreement to a trial date that is outside the 120 days. And that's what the case says. And I know the state has some problems with it, but the people who fix those problems are the Illinois Supreme Court, not me. Given that technical definition, simply bringing up that initial period and establishing that is not a delay. And in fact, we have some language in some relevant cases in Whitman, among others, where they say that we find that Whitman has not agreed to any delay in the technical sense. That's Mike's gloss. She's merely agreed that the original trial setting, which was available within the speech trial limit, was amenable with her schedule. That's exactly what happened here.  And when it was proposed by the court in, sorry, in Zalzani, that any date agreed to by the defense, that is, by the dissenting judge, the majority of the panel actually rejected that argument quite explicitly. I mean, there wasn't any two ways about it. They said that that's inconsistent with Cordell's definition of delay. So in Lafayette, excuse me, that's Zalzani, my apology. Sorry, the Zalzani court rejected the position taken by the dissent in Lafayette, which presumably the majority in Lafayette did also. So there were two arguments that the idea that any passage of time agreed to by the defense is a delay attributable to the defendant. So we're talking about an initial trial date, and that was the one that was set for, announced without any dispute on December 2nd, to have been set on October 1st. That period is now set. And October 1st was the defendant represented by counsel? Yes. And in court? Yes. Did he demand trial on that date? No, but the thing is, what he does is set the trial date at that point. But he didn't demand trial. He didn't say, I'm ready for trial. I demand trial. I want to go to trial. He didn't say anything like that, did he? The Cordell court. No, no, no. I'm asking about. No, he didn't. But the Cordell court has said that that's actually premature, because if you don't have a trial date. Well, if it's premature, why would it count? Well, it doesn't count. It doesn't count against him. It would be premature. I would count it against the state if it doesn't count. The thing is. Don't you have to demand trial? Don't you have to tell the court, I demand trial? My client demands trial? Presumably you come in and say, I want trial. And the court says, we can do this in 60 days. And at that point, the client doesn't say. Perhaps it was received as the equivalent of, I'm pleading not guilty. I want to go to trial. It doesn't say, I demand trial. That was already done. I mean, when he was brought into court the first time and filed a check that day. Okay. I don't want to belabor the point. I'll take it. But the Coldwell court actually considered that point, if you'll excuse me, and rejected it where they considered the argument that a demand for trial made before a trial date had been set isn't effective because you don't have anything to either put into effect or to delay. But you have to start the clock at some point. Typically it's by, if you walked out in front of the court and the first day you appeared in front of the bench and said, there is no trial date. There is nothing. I don't know what's going on. But I want a trial. I demand a trial right now. Wouldn't the clock start then? The clock starts when, it starts actually when he's arrested, according to the statute. Okay. Okay. And then it runs until somebody asks for a continuum, which delays the trial date. And that happens a couple of times. And then they come in and set the trial date. So if both the defense and the defendant both agreed to a trial date a month in the future, do you believe that the Speedy Trial Act would control? Yeah. They both said, okay, great. We agree to start on September 1st. There doesn't have to be an opposition. The state can agree to something that's not a continuum, such as the setting of an initial trial date, that allows the act to run. The act doesn't say there has to be an objection. It starts running without anyone making a speedy trial demand when the defendant is arrested. It runs until the defense requests a continuance, which happened here, and we're not disputing a couple of times at the beginning where the defense requested a continuance, and those dates run against the defendant. So when they came and said, all right, let's set a trial date, if the court had said, as I said, if the court had said, all right, tomorrow, or today, let's do it today, if at that point the defense had said, hey, wait, I'm not ready yet, that's a different question than is posed in this case. We don't know whether he was ready or not. We know that he wasn't ready on this second, but that didn't mean that the missing witness wasn't relevant at that point. We simply don't know. That's not on the right. And that case, that interpretation is actually supported by Wilton, Zazani, Luthier. This is not something novel or bizarre. Well-founded in the Illinois case law. But Wade sort of calls all those into question, does it not? Wade is different because Wade considers the effect of resetting an already scheduled trial date. And why is that different? Because according to the Wade court and also the Libby court, there's a problem with a defendant basically trying to game the system by pushing the matter back, moving an already set trial date to a later date, and asking for continuances until it's either outside or too close to the limit for the prosecution to put on a case. That's not posed by setting an initial trial date. An initial trial date is per se inside the limit unless it's agreed to. For some reason, the defendant agrees to a period that's later, in which case they've agreed to it and there's nothing to dispute. But Wade says an agreed continuance tolls the speedy trial period, whether or not the case has been set for trial. But this isn't a continuance. No one mentions the word continuance in that hearing. Well, what is it when you go from one trial, one court date to another court date? It's an agreement to a trial date. That's all it is. I mean, if somebody is... So you're saying an agreed continuance tolls the speedy trial period, whether or not the case has been set for trial. You're making a distinction over the word continuance? Well, that's one issue, okay. There's eight ideas that there is... If they've agreed to it, there are continuance which is never mentioned. This is at the record at G2. It's also set on 13th, 14th of the defense brief, the initial appellate brief. Nobody proposed a continuance and someone else agreed to it. What they agreed to was setting the initial trial date. And the period in which that happens, unless you're going to abandon all of those cases, given that the facts of Wade specifically involve resetting an initial trial date, anything else that they say is over a dicta, don't involve a delay attributable to the defendant, whatever else they involve. And those cases all hold this expressly and explicitly. So the next point, I mean, are you all satisfied with that or further questions on this point? I'll give you time to address your other arguments. The next point concerns the date on February 8th. I assume that it's clear enough that if the judge can't attend this on February 3rd to February 8th, that's not attributable to the defendant. The State doesn't grant that, but, I mean, it seems pretty obvious to me. But it also doesn't bring you over the 120. Just pointing out that that's not only attributable to the defendant. Not every passage of time is attributable to the defendant. So what happens on February 8th is that the defense comes in and the counsel says, all right, we agreed to trial on October the 1st, and that's not disputed. It would be disproved on December the 2nd. And then says, well, I'd like a continuance because we need this witness and whatnot. And at this point, Mr. Rowland speaks up. Since normally you're bound by your attorney, but the case law, particularly Bowman, tells us you're not bound by your attorney if you immediately repudiate their action. You can't wait until later. If you do it then and there and you do it unambiguously, you're not bound by that action. And typically people don't. Typically they're not clear. But Mr. Williams was as clear as you could possibly be. Hold on for a moment and I will tell you what it was that he said. He said he was very concerned about how long it was taking the state to bring him to trial. He said, let his attorney know that he wanted him to bring him. I'm reading out the I's here. You don't have to reread your brief. Read your brief. But he demands a trial in no unclear terms. I don't go to trial. Now, the attorney might think that he's not, and the state argues that, well, this is not one of the things where the attorney is obliged as a matter of ethics or law to follow the defendant's directions, and that's true. But that's not what Bowman says. Bowman says not that this is one of those cases, but whether it's effective in repudiating the attorney's, as an agent's, unauthorized action. And the case says, yeah, it is. If you're unambiguous, you do it right away and it's completely clear. Here it couldn't be clearer and it's done right away. And the court cut him off, said, no, please let your lawyer finish. And afterwards, he let his lawyer speak. He spoke at the very time his lawyer asked for their continuance. Counsel, you have used 15 minutes. I want you to know that. Okay. I'm very grateful, and I'll just say that we have a question about the adequacy of the evidence. There's no evidence in support of the knowledge element of the required claim. The evidence is that he was found in the car, which was stolen for sure, but the question is whether he knew. There's excluded evidence saying that he didn't know it was stolen. He said it twice. And it was error to exclude that evidence. It stayed in mind in one case. I didn't know it was stolen. And in the other case, he said he didn't know whose car it was when he's supposed to have said it to the policeman that he saw the so-and-so's car, and it wasn't this person's car. So actually, that's two parts. One is the excluded error, and the other is the knowledge point. There's broken glass, but that's consistent, for example, with the car being abandoned, not sufficient to establish that he knew it was stolen. Unfortunately, there are abandoned cars like this in a lot of places. And the third point, since I dealt with those two on the outside, is the prosecution's improper statement based on no evidence at all that he'd stolen the car from the north side, driven it down to the south side, was smoking crack at a crack pipe, so identified as something that the owner of the car assumed was for drugs. No other identification, no testing for drugs. Basically, depicting Mr. Williams as a crack-smoking car thief on the basis of no evidence at all, highly prejudicial and completely unsupported, not permitted under Illinois law under closing, not part of the prosecution's theory of the case as the court voted. Thank you. Whatever time is left, I will reserve. Thank you. Thank you, counsel. Good afternoon, Your Honors. May it please the Court, Mariam Ahmed on behalf of the people of the State of Illinois. Defendant's conviction in this case should be upheld because there was no speedy trial violation. Defendant was found guilty beyond a reasonable doubt of possession of a stolen motor vehicle, and the people's closing argument was proper and not prejudicial, and defense counsel was not ineffective for refusing to object to defendant's closing, to the people's closing argument. In regard to the speedy trial violation, there is a discrete period of time that is at issue in this case, and that period is a period during which defense counsel decisions control, and that's the February 8th trial date, February 8th of 2015. On that date... 2016. 2016, thank you, Your Honor. What about the first period, 10-1-15 to 12-2-15? On 10-1-15, defendant did not answer ready for trial. The case was continued, was set for trial, and so the defendant agreed to the trial date on October 1st of 2015 by agreement for jury on December 2nd of 2015. When the case was set by agreement for jury, that was at defense counsel's agreement. That was memorialized via the transcript from October 1st, and also the common law record. And so it's the people's contention that on February 8th is the real date at issue, because this was the date when defendant was disgruntled regarding his attorney not being ready for trial. And as Casmeric Bowman and the Illinois Professional Rules of Conduct hold, it is the defense attorney who controls whether or not a date is to be continued for whatever reason, be that for trial or any other reason. And defendant must follow his attorney in that regard, and it's the defense attorney's decision that determines the outcome for the defendant. And by that I mean if the defense attorney asks for a status date, then that time counts against the defendant for speedy trial purposes. Section 103.5 subsection A of the Speedy Trial Act puts the onus on the defendant to demand trial. That precept is reflected in the Wade decision, which says that if a defendant desires to proceed to trial, he must either clearly, early demand trial on the record or file a written demand for trial, neither of which happened right on October 1st. He can, Your Honor, by asking for new counsel, and then with that new counsel setting the matter for trial, but that did not happen here. Not on his own. And that's because case law and statutory law acknowledge the tension that exists between an attorney being prepared to proceed to trial in a timely manner, and the consequence of going to trial when he or she is not prepared to try the matter, because in that case, in the latter case, counsel runs the risk of provoking ineffective assistance of counsel. So it's for that reason that the decision to demand trial is within the province of the defense attorney and not the defendant. So for those reasons, it's the people's belief that Workman does not apply. In Workman, the defendant merely agreed that the trial date was amenable to her schedule. She was prepared to proceed to trial. In Wade and his progeny, those cases have declined to follow Workman and hold to the precepts of the Speedy Trial Act, which indicate that a defendant must either early demand trial on the record or file a written demand for trial. But the time to start running them is the day of the arrest. That's correct. And so from the date of arrest, which in this case, Your Honor, was June 26, 2015, until the defendant was arraigned, which was the period of incarceration to the first court date, that was 22 days. Those dates count against the people for the purpose of the Speedy Trial Act, and the people are not contesting that. So when the defendant says that it doesn't stop being charged against the people until the trial date has come, and that has to be continued, what's your position on that? Our position is consistent with Wade, and we would ask the court to follow Wade, which clearly indicates that any continuance, which is not followed by a demand for trial, either early or a written demand, counts against the defendant for Speedy Trial purposes. Whether that continuance is for status or for trial, it doesn't matter. The burden is on the defendant, counsel cited Cordell. Cordell clearly says the onus is on the defendant to demand trial, and to do it clearly, and it lays out the way that should be done, consistent with Section 1035A of the Speedy Trial Act. So for those reasons, in regard to defendant's Speedy Trial argument, we would ask that you affirm defendant's conviction. As relates to the sufficiency of the evidence. When viewing the evidence in the light most favorable to the people, we believe that there is sufficient evidence for a reasonable trial of facts, and in this case, the jury, to find sufficient evidence as to each element of the charge presented for possession of a stolen motor vehicle. Of particular interest is the fact that defendant was asleep in this vehicle, and was not able to get out. There was a broken out window, there were shards of glass visible along the frame of the window. There were items that were personal in nature strewn throughout the car. And in addition, the defendant was asleep in the vehicle during the day on a residential street, where there were many other vehicles parked. And what's significant about that fact is that it's at a time when most people are going to work. So the fact that he was asleep in the car, the reasonable inference for the jury was that he had knowledge that this vehicle was stolen. Because of where he was, and how he was in the vehicle at the time when he was discovered. What about a van? To, again, in looking at the evidence in the light most favorable to the people, versus looking at a reasonable hypothesis, and looking at the evidence in the light most favorable to the people, the jury reasonably inferred that that was evidence of defendant's knowledge. In addition to the fact that his possession of the vehicle was unexplained. In addition to the fact that the owner of the vehicle did not know him, and did not give him permission to be in the vehicle. So for those reasons, we believe that there is sufficient evidence for a reasonable trial of fact to conclude that defendant was in possession of a stolen motor vehicle, and that he, in fact, did know that that vehicle was stolen. In regard to the people's closing argument, we believe and maintain that the people's argument was proper and not prejudicial. The people are given wide latitude in closing argument, and are permitted to draw reasonable inferences based on the evidence and testimony presented at trial, even if those inferences cut negatively against the defendant. In this case, the judge instructed the jury that closing argument was not evidence. And in looking at the evidence in this case, the evidence was not so closely balanced that it threatened to tip the scales of justice, nor was the evidence admitted so that the argument, the argument, so egregious that it challenged the fairness and integrity of the defense. And so for those reasons, it's our belief that the closing argument was proper, and that defense counsel's failure to object was reasonable for strategic purposes. Many attorneys do not object to closing because of their own strategies, which is permitted. And so for those reasons, we believe that the closing argument was not so close that it threatened to tip the scales of justice, nor was the evidence admitted so that the argument, the evidence, so egregious that it challenged the fairness and integrity of the defense. All right, thank you, Your Honors. For these reasons and the reasons that we offered in our brief, we would ask that you affirm defendant's conviction. Thank you very much for your time, Your Honors. May I please the Court? I'd like to cut right to the chase and address the State's totally astounding and unexpected argument that the only way to repudiate your attorney's decision that you disagree with is to fire him on the spot, for which there is no support anywhere in either Illinois law, in federal law. I don't know about other states, but I'd be astounded if it was there in any other state either. And it's certainly not in the statute. But in case it says clearly, what you have to do is you have to speak up right then, and you have to be unambiguously clear on the record. And if Mr. Williams could have been any clearer, I don't know how. And he certainly spoke up right then. Well, the Court ruled that that was a motion to dismiss for a violation in a 120-day speedy trial and denied that motion. And so that was looking retrospectively. Then at the end of the hearing, the Court set a date, and the Court said, by agreement. And the Court said, all right, I'll see you on April 19th. By agreement, the jury, civilian, closed on the minute. And that was right after having a dialogue with the defendant. And there was no objection at that point. I'm not sure that you have to object twice, having made your point clear in the first instance. I think the first instance was a motion for a speedy trial violation prior to this date. Did the Court say, I'll treat that as a motion? The Court did say that, but I believe that that is manifestly erroneous. He said he wanted his attorney to demand trial immediately. He wanted to exercise his right. He wanted a jury trial. And so I think that that's understood properly as an objection. Whether or not the Court ruled that it's a motion, it's still an objection on the record and clear. I mean, that's what you have to do. You have to bring, according to Bowman, a clear objection on a record that is timely. He did that. And the Court said, by agreement. Well, I mean, the Court ruled that there was no objection, but that's erroneous because there was an objection. And he just had it until Mr. But I think Justice Griffin's point was that day, they're in front of Judge Joyce, is it? Yes, Judge Joyce. Right. And he has this issue in front of him, the defendant saying, I have a right to a speedy trial. Right? And Judge Joyce treated that discussion as the defendant's motion to be discharged because of a violation of the speedy trial. He went through it and decided, made a decision, that it was not well-founded. Now that discussion is over, now we're back on, so you're here and you're going to get a trial at some date in the future. Not today. So we're going to continue it to the next date. And he says, by agreement. Now, that is two different thought processes. It is, but I'm not disputing whether or not Judge Joyce's decision to treat that as a motion was correct. But whether or not it was a motion was a clear and unambiguous timely objection, which is what was required. And what about when Judge Joyce that same day continued it into the future by agreement? Was that effective against the defendant, or was his demand still in place? I believe his demand was still in place. I mean, after he had no obligation or his lawyer had no position of saying, no, no, it's not by agreement, it's motion state. I don't agree. I believe that his lawyer did have that obligation. In fact, had the obligation to bring the objection that he was entitled to a trial back in December, to begin with, December 2015. But I think that the issue here is not the propriety of the motion, which is not, you know, if it's a motion, which is not an issue. I'm not arguing that the judge erred in deciding a motion incorrectly. As a matter of fact, I think he probably did, but that's not the point here. I'm not raising that point. I'm raising the point that Mr. Williams made a clear, unambiguous objection to the continuance that was set at the beginning. The judge shut him up twice. He, understandably, did not depress on. I mean, any of us who have argued before courts, you know, sometimes you have to let things go. And in this case, the judge had already told him once to be quiet. With regard to the issue about Wade, I want to underline that the Wade case concerns an issue that's not implicated here, which is the subsequent resetting of a trial that, in that case, had been reset twice. And the court was concerned that the defendant not gained the system by continuing to push it back. That's something that raised here. What was set in the first case in October was the initial trial date, well within the limit. And for those cases, Workman, Zolvani, and Schrader control, because the other case concern isn't implicated. Finally, with regard to the sufficiency, that comes together with the incorrect decision to exclude, a manifestly incorrect decision to exclude as hearsay things that are state-of-mind testimony and prior inconsistent statement showing that there was evidence that the jury never got an opportunity to hear, that Mr. Williams didn't believe that the car was stolen, didn't know that it was stolen. And that well might have tipped the difference, especially with a less prejudicial closing argument. No further questions? Thank you. Thank you, counsel. We will take this matter under advisement, and you will hear from us shortly.